**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-cv-60949-BLOOM/Valle**

FRESH RESULTS, LLC,

Plaintiff,

v.

ASF HOLLAND, B.V. and
TOTAL PRODUCE, PLC,

Defendants.
_________________________/

## ORDER ON MOTION TO DISMISS UPON REMAND FROM ELEVENTH CIRCUIT

**THIS CAUSE** is before the Court upon the mandate of the United States Court of Appeals for the Eleventh Circuit, ECF No. [66] ("Mandate"), vacating the Court's order of dismissal on the basis of *forum non conveniens*, ECF No. [61] ("Order"), and remanding for further proceedings. The Court has carefully reviewed the Mandate, the Order, the record in this case, including the supplemental briefing submitted by the parties, ECF Nos. [75], [81], [85], the applicable law, and is otherwise fully advised. Moreover, the Court has had the benefit of oral argument from counsel at a recently scheduled hearing. For the reasons that follow, Defendant ASF Holland, B.V.'s ("ASF") Motion to Dismiss, ECF No. [46] ("Motion") is granted in part.

## I. BACKGROUND

Plaintiff Fresh Results, LLC ("Fresh Results") asserts claims for breach of contract, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, fraudulent inducement, conversion, and tortious interference with a business relationship against ASF, arising from the consignment and sale of fresh blueberries sourced from growers located in South America

(the "Growers"). *See* ECF No. [37] ("SAC"). In its Motion, ASF sought dismissal of the SAC on several grounds, including forum *non conveniens*, lack of standing, failure to state a claim, and the failure to plead fraud with particularity. *See generally*, ECF No. [46]. In its Order, this Court concluded that the SAC should be dismissed on *forum non conveniens* grounds. The Court based its analysis on the private interest factors set forth in *Wilson v. Island Sea Invs., Ltd*., 590 F.3d 1264, 1269 (11th Cir. 2009) (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc*., 578 F.3d 1283, 1289–90 (11th Cir. 2009)) and the determination that the private interest factors were not in or near equipoise. Therefore, the Court did not engage in an analysis of all public interest factors. Moreover, the Court did not address the remaining arguments for dismissal. *See* ECF No. [61].

Fresh Results filed a notice of appeal of the Court's Order, ECF No. [62]. On appeal, the Eleventh Circuit determined that the Court abused its discretion in failing to consider the relevant public factors and committed two errors in its analysis of the private factors. *See* ECF No. [66] at 4. Specifically, the Eleventh Circuit expressly disavowed the equipoise standard applied by the Court and directed the Court on remand to consider all relevant private and public factors. The Eleventh Circuit invited the Court to reweigh the private factors and expressly directed the Court to correct two errors in its analysis of the private factors: the Court could not disregard the importance of the Growers because they are non-parties, and the Court's reliance solely on the absence of a treaty regarding the reciprocal recognition and enforceability of a possible judgment was an erroneous factor to weigh in favor of dismissal.

At the request of the parties, the Court held a status conference following issuance of the Mandate. The Court thereafter permitted the parties to submit additional briefing. *See* ECF Nos. [71], [75], [81]. The Court also heard argument from the parties at a hearing held on August 8, 2019. *See* ECF No. [86]. With the benefit of the supplemental briefing and argument from the

parties, and clarification and directions from the Eleventh Circuit, the Court now conducts the *forum non conveniens* analysis anew.

## II.    LEGAL STANDARD

The doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when the convenience of the parties and the interests of justice weigh in favor of litigating the action in an alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). Analytically, the court's examination is three-pronged. *Id.* When moving to dismiss a case on *forum non conveniens* grounds, the movant must show: (1) the availability of an alternative and adequate forum; (2) that public and private factors weigh in favor of dismissal; and (3) that the plaintiff can reinstate his suit in the alternative forum. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

The Supreme Court has "characterized *forum non conveniens* as essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)). "The doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009). "This tool 'is to be favored' for ensuring that federal courts only hear 'those cases where contacts with the American forum predominate.'" *Aldana v. Fresh Del Monte Produce, Inc.*, No. 01-3399-CIV, 2007 WL 3054986, at *3 (S.D. Fla. Oct. 16, 2007), *aff'd sub nom, Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578

F.3d 1283 (11th Cir. 2009) (quoting *Sigalas v. Lido Maritime, Inc*., 776 F.2d 1512, 1519 n.10 (11th Cir. 1985)).

The defendant invoking *forum non conveniens* "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd.*, 549 U.S. at 430. In fact, at the outset, the scale tips in favor of a plaintiff's chosen forum when the plaintiff is a domestic citizen. *Duha v. Agrium, Inc.*, 448 F.3d 867, 874-75 (6th Cir. 2006). There is a strong presumption by the Supreme Court that *forum non conveniens* should only be employed in "exceptional circumstances" and that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The general rule, therefore, is that dismissal for *forum non conveniens* is proper only when a defendant "establish[es] such oppressiveness and vexation . . . as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). To the extent that courts consider matters outside the complaint, courts must "draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *OOO-RM Invest v. Net Element Int'l, Inc.*, No. 14-20903-CIV, 2014 WL 12613283, at *2-3 (S.D. Fla. Nov. 3, 2014) (citing *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) and *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)). In light of these standards, the Court reconsiders the issue of *forum non conveniens* in this case.

## III. DISCUSSION

### A. *Forum non conveniens*

The essential facts underlying Plaintiff's claims in this case are unchanged and are fully set forth in the Court's previous Order. *See* ECF No. [61]. In its Motion, ASF argues that the SAC should be dismissed on *forum non conveniens* grounds because litigating this case in the Southern

District of Florida would impose a heavy burden on ASF and the Court, and make full and fair adjudication difficult, if not impossible, due to the location and inaccessibility of evidence and fact witnesses.

i. Availability and Adequacy of an Alternative Forum

"Availability and adequacy warrant separate consideration." *Leon*, 251 F.3d at 1311. Ordinarily, an alternative forum is available simply "when the defendant is amenable to process in the other jurisdiction." *Piper*, 454 U.S. at 255 n.22 (internal citation omitted). If the remedy offered in the other forum is unsatisfactory, this requirement may not be satisfied. *See id.* "[T]he Supreme Court has instructed us that a remedy is inadequate when it amounts to 'no remedy at all.'" *Aldana*, 578 F.3d at 1290 (quoting *Piper*, 454 U.S. at 254).

ASF argues that The Netherlands is an adequate alternative forum.[1] Defendant's sworn declaration of Sebastiaan Moolenaar ("Moolenaar"), a lawyer admitted to practice in The Netherlands, states that claims raised by Plaintiff may be asserted in The Netherlands. *See* ECF No. [46-2], at ¶¶ 3-11.[2] In addition, Moolenaar affirms that ASF is amenable to service of process and subject to the personal jurisdiction of The Netherlands' court system. *Id*., at ¶ 12. Because the Court finds that Defendant is susceptible to suit in The Netherlands, the "availability" prong is satisfied. *See Aldana*, 578 F.3d at 1290 ("In order to be available, the foreign court must be able to assert jurisdiction over the litigation sought to be transferred."). The "adequacy" consideration is similarly satisfied because all of Plaintiff's claims are cognizable under Dutch law. As such, the

[1] The Court notes that Plaintiff does not dispute the adequacy and availability of The Netherlands as an alternative forum.

[2] The declaration of Moolenaar, ECF No. [46-2], is appropriately considered when determining a motion to dismiss based on the doctrine of *forum non conveniens*. *Ochoa v. Empresas ICA, S.A.B. de C.V.*, No. 11-CIV-23898, 2013 WL 5674697, at *4 (S.D. Fla. Oct. 17, 2013) (relying on sworn declarations attached to a motion to dismiss of foreign attorneys in *forum non conveniens* analysis). Plaintiff did not file any expert declaration opining on foreign law in opposition to the Motion.

Court finds, as it did in the Order, that The Netherlands is an adequate available alternative forum. However, even when an alternate forum is available, a defendant still bears a heavy burden in demonstrating the offsetting disadvantage to litigating in a plaintiff's chosen forum. Thus, the Court proceeds to a consideration of the relevant private and public interest factors.

Once an adequate alternative forum has been established, the Supreme Court has directed district courts to consider the "private interest of the litigant." *Gulf Oil Corp.*, 330 U.S. at 508. If the court finds that private factors favor dismissal, the Court then determines whether or not factors of public interest tip the balance in favor of a trial in a foreign forum. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983).

ii. Private Interest Factors

The private interest factors a court may consider in its *forum non conveniens* analysis include (1) ease of access to sources of proof and evidence; (2) availability and costs of obtaining willing and unwilling witnesses, and (3) "all other practical problems that make trial of the case easy, expeditious and inexpensive." *Id.* When plaintiffs are "citizens, residents, or corporations of this country," the Eleventh Circuit mandates that a district court "'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101-02 (11th Cir. 2004); *see also La Seguridad*, 707 F.2d at 1308 n.7. The deference given to a plaintiff's choice of forum is especially strong in the Eleventh Circuit. Here, Plaintiff is a United States limited liability company with its principal place of business in Florida. Therefore, the Court gives Plaintiff's choice of forum a high level of deference and presumption of

convenience. *See TNT USA, Inc. v. TrafiExpress, S.A. de C.V.*, 434 F. Supp. 2d 1322, 1333 (S.D. Fla. 2006).

In the Motion, ASF argues that the location of witnesses and evidence favor dismissal on *forum non conveniens* grounds.[3] Whether sources of proof are accessed with relative ease in Plaintiff's chosen forum, is "[p]erhaps the most important 'private interest' of the litigants . . . ." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003); s*ee also, e.g.*, *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1324 (S.D. Fla. 2006) (dismissal on *forum non conveniens* grounds supported by "the quantity and quality of the evidence" located in Brazil); *Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1239 (S.D. Fla. 2006) (explaining that the vast majority of potential witnesses and documents were located abroad and that the costs associated with litigation would be far greater if the action were to proceed in Florida).

Specifically, ASF contends that all documents and other materials relating to Plaintiff's claims are located in The Netherlands, and furthermore, that all documentary evidence, financial records and witnesses necessary to prove ASF's anticipated counterclaims are located in The Netherlands, where ASF is domiciled. As the Court determined in the Order, in today's advanced technological environment, the exchange of documentary evidence stored electronically may not be unduly burdensome. *See City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Cellulose S.A.*, 41 F. Supp. 3d 1369, 1411 (S. D. Fla. 2011) (dismissal denied because "[a]lthough the majority of proof may be located in Brazil, many of the documents and records are likely electronically stored and can easily be transferred."). Thus, this particular factor

---

[3] ASF also argues that the unenforceability of an American judgment in The Netherlands also weighs in favor of dismissal; however, as the Court notes, the Eleventh Circuit characterized this argument as a red herring, since no bilateral treaty or multilateral convention exists between the United States and any other country regarding the reciprocal recognition and enforcement of judgments. *See* ECF No. [66] at 17. Accordingly, the Court does not expend analysis on, or re-weigh, this factor.

does not weigh in favor of dismissal. Moreover, although some of the events giving rise to Plaintiff's claims took place in The Netherlands, this fact alone does not weigh heavily in favor of dismissal, especially since Plaintiff managed its business relationship with ASF and the Growers from Florida, and received the alleged misrepresentations in Florida. As a result, the Court finds that the relative ease of access to sources of proof does not weigh in favor of dismissal.

Nevertheless, ASF argues that the key witnesses, including inspectors, packers, and accounting personnel, are located in The Netherlands. ASF contends that those witnesses are outside the Court's subpoena power, citing paragraph 4 of the Declaration of Ronald Jongbloed ("Jongbloed"), ECF No. [46-1], which ASF submitted in support of the Motion. In its Order, the Court relied upon ASF's statement to note that several third-party witnesses are outside of the Court's subpoena power. Upon review, this was error, as Jongbloed's Declaration does not support ASF's statement.

In his Declaration, Jongbloed states that "[a]ll *employees* who might be a knowledgeable witness employee, including inspectors, packers and accounting personnel, among others, are located in The Netherlands." ECF No. [46-1] ¶ 4 (emphasis added). However, Employees are not third-party witnesses, and are within ASF's power to produce. *Wagner v. Island Romance Holidays, Inc.*, 984 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013) (foreign witnesses insufficient to overcome strong presumption because they were "at least arguably associated with or employees of [defendant]"); *Ward v. Kerzner Int'l Hotels Ltd.*, No. 03-23087-CIV-JORDAN, 2005 WL 2456191, at *1 (S.D. Fla. Mar. 30, 2001) (foreign witnesses insufficient to override strong presumption because they were defendant's "own agents and employees"); *TNT USA Inc.*, 434 F. Supp. 2d at 1334 (no dismissal because foreign witnesses are "under the control" of defendant); *Doe v. Sun Int'l Hotels, Ltd.*, 20 F. Supp. 2d 1328, 1330 (S.D. Fla. 1998) (no dismissal because

"key defense witnesses are employees of the defendant"). As such, ASF fails to identify any unwilling witnesses in its Motion that would tip the balance in favor of dismissal on this ground.

Indeed, in ASF's initial disclosures, ECF No. [57-3], the only persons with knowledge listed who are not employees of either ASF or Fresh Results and located outside the United States are Tristan Gortz, the individual responsible for clearing shipments of consigned berries, who is employed by Kuehne & Nagel, N.V., and a Mr. Madariaga from Guarantee Control Service Europe, the surveyor-auditor hired by one of the Growers to conduct an inspection of blueberries at ASF. The fact that these individuals and entities are located abroad is not decisive, as the presence of witnesses outside of the United States is insufficient to overcome the strong presumption afforded to domestic plaintiffs. *Ward*, 2005 WL 2456191, at *3; *Aldana,* 578 F.3d at 1293; *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1303 (11th Cir.2002) ("[F]ederal courts, in the *forum non conveniens* context, do not focus on the connection between the case and a particular state, but rather on the connection of the case to the United States as a whole.").

Moreover, Fresh Results' witnesses are located or available in Florida. Fresh Results provided the Affidavit of Eric Crawford, ECF No. [50-1], the founder, president, and CEO of Fresh Results. Crawford represents that the Growers would participate as witnesses in proceedings in Florida, but not in The Netherlands. ECF No. [50-1] ¶ 17. As a result, this factor does not weigh in favor of dismissal.

Upon further consideration, the Court does not find that the cost of bringing willing witnesses to the United States poses an unfair financial burden such that dismissal would be appropriate. ASF did not make this argument in its Motion, and there has been no showing that it would be "unusually inconvenient or costly to transport" ASF's witnesses. *Barnext Offshore Ltd.*

*v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV-ALTONAGA/Simonton, 2011 WL 13223747, at *6 (S.D. Fla. June 22, 2011). Accordingly, this factor does not weigh in favor of dismissal.[4]

This Court finds that the Defendant has not satisfied its burden of setting forth "positive evidence of unusually extreme circumstances" sufficient to overcome the strong presumption in favor of Plaintiff's choice of forum. *Ward*, 2005 WL 2456191, at *4. Defendant fails to provide arguments that "material injustice is manifest" such that the Court should be compelled to deny the Plaintiff access to United States courts. The Court therefore finds that the relevant private interest factors weigh against granting dismissal on basis of *forum non conveniens.*

iii. Public Interest Factors

The Supreme Court has advised that the public interest factors for this Court's consideration include:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.*, 454 U.S. at 241 n.6 (internal quotations omitted).

Further, in *SME Racks, Inc.*, the Eleventh Circuit Court of Appeals made clear that the "United States has a strong interest in providing a forum for its citizens' grievances against an allegedly predatory foreign business." *Id.* It is also worth noting that "although the Southern

---

[4] Nor does the Court believe that a view of the premises is a particularly relevant factor for consideration, since ASF did not raise it as a basis for *forum non conveniens* in its Motion. While the Court noted in its Order that a view of ASF's premises in The Netherlands could assist with resolution of this matter, the argument at the hearing leads the Court to conclude that a view may not be particularly helpful in 2019 for packing that occurred years earlier. In any event, even if a view would be helpful, it would not be necessary, since ASF may demonstrate its typical process of packing and grading blueberries by other means, such as witness testimony, photographic or video evidence.

District of Florida has one of the busiest dockets in the United States," this factor should be accorded little or no weight in the analysis as this District is the second fastest in the country in terms of the median time in months from filing to disposition of civil cases. *Morse v. Sun Int'l Hotels Ltd.*, No. 98-7451-Civ, 2001 WL 34874967, at *6 (S.D. Fla. Feb. 26, 2001); *Federal Court Management Statistics—Profiles*, June 30, 2019, www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf. ASF has provided no information regarding potential court congestion in The Netherlands and the Court has no reason to believe that this case would not proceed to an efficient conclusion in this District.

Additionally, this case is in key respects a localized Florida controversy. This Court emphasizes that the federal interest is "very strong . . . [when] its citizens are allegedly victims and the injury occurs on home soil." *SME Racks*, 382 F.3d at 1104. This controversy concerns an American company based in Florida that was allegedly injured in Florida as a result of Defendant's actions. Therefore, the Southern District of Florida has a strong interest in adjudicating a case in which a company based here claims that harm was committed against it.

The Court previously determined that Dutch law would likely apply to the contract and tort claims. However, this fact alone is not enough to defeat the Plaintiff's ability to litigate the case here in the United States. *See TNT USA, Inc.*, 434 F. Supp. 2d at 1335 (finding that foreign contractual provisions could be properly adjudicated within the American forum, and that the interpretation of foreign law within the contract provisions alone was not enough to take away the plaintiff's ability to litigate in its choice forum); *see also SME Racks, Inc.*, 382 F.3d at 1104-05 (finding that "while the application of foreign law is an important factor to be considered in weighing the public interests, this factor cannot be accorded dispositive weight."); *Burt v. Isthmus Dev. Co.*, 218 F.2d 353, 358 (5th Cir.1955) (finding the need to apply foreign law to decide a

controversy does not amount to a sound reason to dismiss the case). Moreover, based upon Moolenaar's declaration, the causes of action asserted are recognized under Dutch law, and there is no basis at this juncture to conclude that the potential application of Dutch law in this case would complicate the Court's job.

Accordingly, this Court finds that the relevant public interest factors do not support dismissal of this case. ASF has not met its heavy burden, and dismissal on *forum non conveniens* grounds is therefore not warranted.

**B. Additional grounds for dismissal**

Because the Court concludes, upon remand and following a full consideration of the relevant private and public interest factors, that dismissal for *forum non conveniens* should not be granted in this case, the Court will consider ASF's remaining arguments for dismissal.[5]

ASF argues that the SAC should be dismissed because Fresh Results lacks standing to bring claims on behalf of the Growers, the claim for breach of contract fails to allege the existence of a contract or to attach the contract, the claim for conversion fails to allege any ownership interest in the blueberries, the tortious interference claim fails to allege facts about ASF's intentional and unjustified interference with Fresh Results' relationship with the Growers, and the fraud-based claims are not pleaded with requisite specificity. The Court considers each argument in turn.

---

[5] To the extent that Fresh Results contends that ASF has waived the right to challenge the SAC on 12(b) grounds under Rule 12(g), the argument is not well-taken. Rule 12(g) states in pertinent part that "a party that makes a motion *under this rule* must not make another motion *under this rule* raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g) (emphasis added). A motion to dismiss based on *forum non conveniens* is not a motion under Rule 12, and the cases cited by Fresh Results do not state to the contrary. In any event, ASF did not file two successive motions to dismiss the SAC. *See Chen v. Cayman Arts, Inc.*, No. 10-80236-CIV, 2011 WL 1085646, at *2 (S.D. Fla. Mar. 21, 2011) (striking successive motion to dismiss as improper under Rule 12(g)); *Barfoot v. Dolgencorp, LLC*, Case No. 15-24662-CIV-ALTONAGA/O'Sullivan, 2016 WL 6330588, at *1 (S.D. Fla. Feb. 5, 2016) (denying successive 12(f) motion pursuant to Rule 12(g) based upon earlier filing of motion to dismiss).

i. Standing

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)) (alteration adopted; citations omitted). "Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redress[a]bility." *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Specifically, "[t]o have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized; (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003); *see Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (same).

Here, ASF contends that because Fresh Results was the sales agent for the Growers, the allegations in the SAC are insufficient to establish a contractual relationship with ASF, relying on *Media Placement, Inc. for Use & Benefit of Church by the Sea v. Combined Broad., Inc.*, 638 So. 2d 105 (Fla. 3d DCA 1994). However, the facts in this care are distinguishable. In *Media Placement*, the court determined that an agent does not have a cause of action for breach of contract where the only stake in the contract is a commission from the principal. 638 So. 2d at 106. Here, Fresh Results alleges that ASF and Fresh Results agreed to and entered into a business relationship in which Fresh Results would supply blueberries for ASF to distribute and sell. *See* ECF No. [37]

¶ 17. Indeed, nowhere in the SAC does Fresh Results allege that ASF had an agreement with the Growers directly, and thus, any injury sustained by Fresh Results due to alleged non-performance arose as a result of ASF's relationship with Fresh Results. In addition, the claims of fraud and misrepresentation arise from statements allegedly made by ASF to Fresh Results. Accordingly, Fresh Results has standing to assert claims against ASF.

ii. Failure to state a claim

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, that requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions and

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

ASF argues that the claim for breach of contract should be dismissed because Fresh Results fails to allege the existence of a contract or to attach the contract to the SAC. Under Florida law, the elements of breach of contract are: (1) the existence of a contract, (2) a breach thereof, and (3) damages flowing from the breach. *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977). As previously noted, Fresh Results alleges that it entered into an agreement and relationship with ASF in which Fresh Results would supply blueberries to ASF for ASF to distribute and resell. In addition, the SAC alleges that ASF was responsible for breaking bulk, inspecting the blueberries, preparing Quality Control Reports ("QC Reports") to send to Fresh Results, sorting and re-packing shipments to customer specifications, and issuing Pack Reports to send to Fresh Results. ECF No. [37] ¶¶ 20, 25-26. Fresh Results, in turn, relying on pre-shipment reference prices, QC Reports and Pack Reports, would generate a final invoice upon which ASF made net returns payment to Fresh Results so that Fresh Results could then pay the Growers. *Id*. ¶¶ 28-30. As a result of ASF's alleged failure to perform these tasks timely and accurately, Fresh Results contends that it has suffered at least $798,500.00 in damages. As such, upon review the Court concludes that the breach of contract claim is sufficiently alleged.

ASF argues next that the claim for conversion is subject to dismissal because the SAC fails to allege any ownership interest in the blueberries. Florida law defines the tort of conversion as

"the wrongful exercise of dominion or control over property to the detriment of the rights of one entitled to possession." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1269 (M.D. Fla. 2003) *aff'd*, 419 F.3d 1208 (11th Cir. 2005) (citing *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998)); *see Nat'l Union Fire Ins. Co. of Pa. v. Carib. Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) ("Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time."). Thus, a claim for conversion in Florida contains three elements: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000) (*citing Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) ); *see also Mayo v. Allen*, 973 So. 2d 1257, 1258 (Fla. 1st DCA 2008) ("[A] conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time."). Furthermore, "[a]n equitable owner can maintain [an] action [for conversion]." *Bove v. PBW Stock Exch., Inc.*, 382 So. 2d 450, 452 (Fla. 2d DCA 1980).

Fresh Results contends that, as a consignee, it has the rights of an equitable title holder, and therefore, an ownership interest in the blueberries for purposes of conversion. Fresh Results argues further that the allegations in the SAC establish that the Growers consigned blueberries to Fresh Results, which in turn consigned the blueberries to ASF. The Court disagrees. "A consignment relationship is one in which one party, the consignor or principal, transfers certain goods to another party, the consignee or factor, who undertakes to sell the goods on the consignor's behalf in exchange for a commission on the sale." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1312 (11th Cir. 2014). Contrary to its argument in response to ASF, Fresh Results has not alleged that the Growers consigned the blueberries to Fresh Results in the first instance. As pleaded in the SAC, produce (in this case blueberries) is sold by companies on a consignment

basis, where the seller (ASF) agrees to take custody and care of the produce. ECF No. [37] ¶ 6. Fresh Results acted in the capacity of a sales agent, and it managed the consignment process and business relationship from Florida. *Id*. ¶¶ 7-8. Fresh Results alleges further that it consigned shipments of blueberries to ASF. *Id.* ¶¶ 19, 116. However, with respect to its relationship to the Growers, Fresh Results alleges only that it was the sales agent in this business relationship in which it acted as a representative for the Growers, and arranged for the blueberries to be shipped directly from the Growers to ASF in The Netherlands. *Id.* ¶¶ 22, 31. Other than acting as sales agent or representative, Fresh Results does not allege a consignment arrangement between the Growers and Fresh Results that would give rise to the equitable interest Fresh Results claims to have had in the blueberries themselves. As such, the SAC fails to state a plausible claim for conversion.

ASF also seeks dismissal of the tortious interference claim on the basis that there are no facts regarding ASF's alleged intentional and unjustified interference with Fresh Results' relationship with the Growers, and because ASF was not a "stranger" to the relationship.

A claim for tortious interference with a business relationship requires the plaintiff to demonstrate: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (quoting *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348-49 (11th Cir. 1987)); *see also W.D. Sales & Brokerage LLC v. Barnhill's Buffet of Tenn., Inc.*, 362 F. App'x 142, 143 (11th Cir. 2010) ("[I]n order to state a claim upon which relief can be granted for tortious interference with a business relationship, the [plaintiffs are] required to allege the following: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an

intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.") (internal quotation and formatting omitted).

Here, Fresh Results alleges that it was hired by the Growers to facilitate the sale of their blueberries, that ASF knew Fresh Results was acting as an agent for the Growers when it received and accepted the blueberries, and that ASF thereafter failed to obtain reasonable sales prices and intentionally falsified QC and Pack Reports for shipments of blueberries. At the dismissal stage, these allegations are sufficient.

Nevertheless, ASF contends that it should not liable for tortious interference because it is not a stranger to the business relationship, as it engaged in a transaction with the Growers.[6] "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999) (citations omitted). Importantly, a "defendant is not a 'stranger' to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA2009) (quotation marks and citations omitted).

"While non-strangers generally have a 'privilege to interfere' with the business relationship to protect their own economic interests, they may still be liable for tortious interference if they do so in bad faith[.]" *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014)

[6] ASF also argues for the first time in its Reply that it was not a stranger because it was the ultimate source of funds for the relationship between Fresh Results and the Growers. It is improper to raise an argument for the first time in a reply. As such, the Court does not consider the argument. *See, e.g.*, *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotations omitted); *Willis v. DHL Global Customer Sols. (USA), Inc.*, No. 10-62464-CIV, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (collecting cases stating that it is inappropriate to raise new arguments in a reply brief and stating that courts in this district generally do not consider these arguments).

(internal citation omitted). "In other words, parties are disqualified from asserting the privilege if they act maliciously or with conspiratorial motives." *CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aereo Boliviano Airlines*, No. 09-CIV-22274, 2011 WL 1559823, at *5 (S.D. Fla. Apr. 22, 2011); *see also Ice Portal, Inc. v. VFM Leonardo, Inc.*, No. 09-60230-CIV, 2010 WL 2351463, at *7 (S.D. Fla. June 11, 2010) ("[A]ctions taken to safeguard or protect one's financial interest" are privileged "so long as improper means . . . includ[ing] physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct . . . are not employed.").

In this case, Fresh Results contends that ASF interfered in its relationship with the Growers specifically through the use of intentional falsification of documents and misrepresentations of information. In any event, ASF's claim that it was a non-stranger and had a privilege to interfere does not affect the sufficiency of the allegations. The assertion of a privilege to interfere in an otherwise protected business relationship is an affirmative defense, and not suitable for disposition upon a motion to dismiss. *See Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1239 (S.D. Fla. 2015).

iii. <u>Failure to plead fraud with particularity</u>

Finally, ASF argues that Fresh Results' claims based in fraud should be dismissed for failure to comply with Rule 9(b).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content

of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)) (internal quotations omitted). Fresh Results' fraud-based claims all require that the circumstances constituting the fraud be alleged with particularity. *See Hearn v. Int'l Bus. Machs.*, 588 F. App'x 954, 956-57 (11th Cir. 2014) (discussing claim of fraudulent misrepresentation; *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (addressing negligent misrepresentation claim); *Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, No. 17-cv-81100-BLOOM/Hopkins, 2018 WL 1072211, at *3-5 (S.D. Fla. Feb. 27, 2018) (discussing claims of fraudulent inducement and fraudulent concealment).

In the SAC, although Fresh Results sets forth generally the circumstances it contends constituted fraud in this case, and specifically identifies four (4) shipments of blueberries for which the QC Reports and Pack Reports contained misrepresentations regarding repacking, sorting, inspection and sale, the SAC does not set forth the specific statements made in those reports that Fresh Results claims were false. Moreover, Fresh Results provides information by way of example regarding two email communications from ASF representatives in which ASF admitted that final sales had not occurred, or that produce reported to have been packed had not yet been packed, ECF No. [37] ¶ 58, 59, and that "upon information and belief" ASF also made misrepresentations with respect to shipments during the previous season for which Fresh Results sustained additional

damages, ECF No. [37] ¶ 62. However, these examples also fail to satisfy Rule 9(b)'s heightened pleading standard because the rule requires that each fraudulent statement a plaintiff intends to rely upon be alleged with particularity. As a result, the fraud-based claims fail to satisfy Rule 9(b)'s particularity requirement.

## IV.    CONCLUSION

Accordingly, ASF's Motion, **ECF No. [46]**, is **GRANTED IN PART AND DENIED IN PART**. The fraud-based claims and conversion claim asserted in Counts 2, 3, 4, 5, and 6 are dismissed without prejudice. In all other respects, the Motion is denied. Fresh Results may file a third amended complaint, on or before **October 4, 2019**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 20, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record