# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 17-cv-60949-BLOOM/Valle

FRESH RESULTS, LLC,

     Plaintiff,

v.

ASF HOLLAND, B.V. and
TOTAL PRODUCE, PLC,

     Defendants.

_____/

## ORDER ON MOTION TO DISMISS COUNT II
## OF THE THIRD AMENDED COMPLAINT

     **THIS CAUSE** is before the Court upon Defendant ASF Holland, B.V.'s ("ASF" or "Defendant") Motion to Dismiss Count II of Fresh Results, LLC's Third Amended Complaint, ECF No. [94] ("Motion"). Plaintiff Fresh Results, LLC ("Fresh Results" or "Plaintiff") filed a response, ECF No. [103] ("Response"), to which ASF filed a reply, ECF No. [108] ("Reply"). The Court has carefully considered the Motion, Response and Reply, the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

## I.    BACKGROUND

     The facts in this case remain essentially unchanged.[1] According to the Third Amended Complaint ("TAC"), Fresh Results is engaged in the business of buying and selling wholesale

---

[1] In the Motion, ASF relies upon allegations from the Second Amended Complaint ("SAC") to support its arguments for dismissal. *See, e.g.*, ECF No. [94] at 5-6 (citing facts regarding ASF's advancing funds in November, 2016, and quality issues regarding the blueberries alleged in the SAC). The filing of an amended pleading "supersedes any former pleadings" by a plaintiff and becomes the operative pleading. *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006); *see Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *Varnes v. Glass Bottle Blowers Assoc.*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982); *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007). As such,

quantities of produce in interstate and foreign commerce. ECF No. [92] ¶ 5. Plaintiff maintains direct business relationships with growers and producers of produce, who seek to market and sell their produce in interstate and foreign commerce. *Id*. ¶ 6. Plaintiff had business relationships with several growers located in South America at the time period relevant to this case. *Id*. ¶ 7. As part of its agreement with the growers, Plaintiff was hired to identify prospective consignees/wholesalers, negotiate and enter into consignment transactions with wholesaler/consignees, provide administrative support including arranging for overnight airfreight shipments, manage relationships with consignees, and receive and process payments from consignees. *Id*. ¶ 9.

ASF is a wholesaler located in Holland to which the berries at issue in this case were consigned. *Id*. ¶ 12. According to the TAC, Fresh Results and ASF entered into a contractual relationship through which Fresh Results arranged for numerous bulk shipments of berries sourced from the growers in South America to ASF in Holland. *Id*. ¶¶ 22-23. As the shipments were sent on a consignment basis, ASF would take custody and control of the shipments upon arrival in Holland, and was obligated to undertake efforts to sell the berries to its customers in Europe. *Id*. ¶ 24. Out of the payments received from its customers, ASF could deduct costs for inspecting, sorting and re-packing the berries, and to take an eight percent (8%) commission. *Id*. ¶ 25. ASF then remitted payment of the net proceeds of sales to Fresh Results. *Id*.

The relationship between Fresh Results and ASF lasted for two berry seasons in 2015 and 2016. *Id*. ¶ 27. The first season proceeded successfully, so Fresh Results continued its relationship with ASF for the second season. *Id*. ¶ 42. During the second season, Fresh Results consigned berries in twenty-two (22) bulk shipments to ASF between October 8, 2016 and November 8,

---

when Fresh Results filed the TAC, the prior complaint became a "legal nullity." *Hoefling*, 811 F.3d at 1277. ASF's reliance on factual allegations from the SAC is therefore improper.

2016. *Id*. ¶ 29. Prior to a shipment, ASF provided Fresh Results with a reference price which represented the anticipated net returns less ASF's commission and costs for each shipment that would be paid to Fresh Results after ASF's sales to one or more of its customers. *Id*. ¶ 30. Based upon the reference price and ASF's ability to timely process and sell the requested volume of berries, Fresh Results would decide in consultation with the growers whether to make arrangements for the harvesting and shipment of the requested volume of berries to ASF. *Id*. ¶ 32. Fresh Results alleges further that ASF knew that Fresh Results relied upon the reference prices in order to decide whether to make a shipment of berries to ASF. *Id*. ¶ 33.

Upon arrival of the berries in Holland, it was ASF's responsibility to break bulk, inspect the berries, and prepare quality control ("QC") reports and send the QC reports to Fresh Results. *Id*. ¶ 35. ASF also was responsible for sorting and re-packing the berries to its customers' specifications, issuing pack reports, and sending the pack reports to Fresh Results. *Id*. ¶ 36. The QC inspections were to take place within one or two days after the arrival of shipments, and the sorting, re-packing and delivery to ASF's customers should have occurred within four days of arrival. *Id*. ¶ 38. In reliance on the reference prices, QC reports and pack reports, Fresh Results generated final invoices for each shipment of berries, and upon payment by ASF of the net returns, Fresh Results would pay the growers. *Id*. ¶¶ 39-41.

According to the TAC, prior to the second berry season, Ron Jongbloed, a managing executive for ASF, assured Fresh Results that ASF could handle any volume of shipments and encouraged Fresh Results to consign all of its berries to ASF. *Id.* ¶¶ 14, 43. The first seven bulk shipments appeared to go smoothly. *Id*. ¶ 44. However, by the time of the seventh shipment, ASF became aware that the market had changed, and that it would not be able to market or sell berries for the prices it had been receiving. *Id*. ¶ 46. Fresh Results alleges that even so, ASF continued to

request shipments from Fresh Results, and induced Fresh Results to continue shipments by giving reference prices that ASF knew were false and were far in excess of what ASF would be able to realize. *Id*. Based on ASF's misrepresentations, Fresh Results arranged for an additional fifteen (15) bulk shipments, which ASF reported eventually selling for only a fraction of the represented reference price. *Id*. ¶ 47. According to Fresh Results, ASF continued making misrepresentations about reference prices and inducing Fresh Results to make more shipments to increase revenues in the face of a declining market. *Id.* ¶ 61. As a result of ASF's actions, Fresh Results estimates that it has incurred damages of at least $798,500.00.

In the TAC, Fresh Results asserts claims for breach of contract (Count 1), fraudulent inducement (Count 2), and tortious interference with business relationship (Count 3) against ASF. In the Motion, ASF seeks dismissal of Fresh Results' claim for fraudulent inducement.

## II.     LEGAL STANDARD

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel.*

*Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)) (internal quotations omitted).

To state a claim for fraud in the inducement under Florida law, a party must allege a "(1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation." *Florida Evergreen Foliage v. E.I. Dupont Nemours & Co.*, 336 F. Supp. 2d 1239, 1284 (S.D. Fla. 2004). "Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So. 2d 1238, 1240 (Fla.1996) (citation omitted). Through this lens, the Court considers the Motion.

## III. DISCUSSION

ASF argues that Fresh Results fails to state a claim for fraud based on the alleged misrepresentation of the references prices because the reference prices were simply opinions or projections of future sales, and therefore do not constitute misrepresentations of material fact, and that the fraud claim is not plausible. In response, Fresh Results argues that the reference prices are actionable because ASF had superior knowledge regarding anticipated net returns and ASF knew that the reference prices were inflated.

"A plaintiff may not maintain an action for fraud based on misrepresentations that were in the form of opinions and not statements of existing, material facts." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342 (S.D. Fla. 2011) (internal citations omitted). "A statement of opinion, such as . . . '[p]uffing' is not to be taken seriously, is not to be relied upon, and is not

binding as a legal obligation or promise." *Id.* "The threshold determination regarding whether the representation is a fact or an opinion requires consideration of the surrounding circumstances." *Grimes v. Lottes*, 241 So. 3d 892, 896 (Fla. 2d DCA 2018); *see Tres-AAA-Exxon v. City First Mortg., Inc.*, 870 So. 2d 905, 907 (Fla. 4th DCA 2004). "Where the representation 'can be viewed as coming from one with superior knowledge of the subject of the statement,' the representation should be treated as a fact." *Grimes*, 241 So. 3d at 896-97 (citation omitted).

In support of its argument that the reference prices are non-actionable opinions, ASF contends that these were arms-length transactions by sophisticated businesses engaged in global importation, that it was Fresh Results' job to be aware of market conditions, that Fresh Results is an expert in the wholesale produce industry, that Fresh Results had superior knowledge of the condition of the berries and therefore should have known that the berries were substandard and would not sell for the provided reference prices. ASF's contentions do not withstand scrutiny.

First, upon a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. Here, ASF's contentions are premised on facts outside of the allegations in the TAC, which the Court has already determined is improper. Second, ASF's assertions otherwise constitute denials of factual allegations, or raise issues of fact not suitable for disposition at the motion to dismiss

stage. *See e.g., Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1237 (S.D. Fla. 2015) (the truth or existence of a fact as alleged is an issue not properly resolved at the motion to dismiss stage).

As alleged in the TAC, Fresh Results maintains direct relationships with growers and producers of produce and connects the growers to wholesalers/distributors. Contrary to ASF's contentions, Fresh Results has not alleged that it has knowledge of European fruit market conditions, or that it would know what ASF's customers would be willing to pay for blueberries at any given time. Rather, the TAC alleges that ASF knew the provided reference prices were inflated based upon its knowledge regarding the market for berries in Europe and its communications with customers regarding what prices they were willing to pay, and how much volume they wanted. *See e.g.*, ECF No. [92] ¶ 51. At the pleading stage, such allegations are sufficient to state a claim for fraudulent inducement.

Moreover, the Court does not agree that the fraud claim is implausible. As alleged in the TAC, ASF continued to misrepresent reference prices, despite its inability to sell at those prices. This was done in order to encourage additional volumes of shipments and to ensure that Fresh Results would continue doing business with ASF in the future when the market would sustain higher prices again. *See* ECF No. [92] ¶ 61.[2] Construed in the light most favorable to Fresh Results, these allegations are sufficient.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. ASF's Motion, **ECF No. [94]**, is **DENIED**.

2. ASF shall file its Answer to the TAC **no later than January 21, 2020**.

---

[2] ASF also argues that the TAC fails to state a claim for fraud premised upon allegedly false pack reports, but in its Response, Fresh Results clarifies that its fraud claim is not premised upon the pack reports, but that the pack reports demonstrate ASF's efforts to cover up its allegedly fraudulent actions and their results. *See* ECF No. [103] at 15. Accordingly, the Court will not dismiss the fraud claim on this basis.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 8, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record